[L. A. No. 5951. Department One.—June 20, 1919.]

## In the Matter of the Estate of ANDREW BERGLAND, Deceased.

[1] ESTATES OF DECEASED PERSONS—WILL—FORFEITURE CLAUSE—IN-APPLICABILITY TO LATER WILL.—A provision in a will that should any one or more of the beneficiaries named therein object to the distribution as made, or attempt to defeat the provisions of the will, said person or persons shall receive five dollars each and no more, has no application to a bequest made by a later will, which makes no reference to the earlier will and consists in terms of an unqualified and unconditional bequest.

[2] ID.—FORFEITURE CLAUSES—CONSTRUCTION.—While it is the rule that forfeiture clauses in wills are valid and are to be given effect according to the intent of the testator, such provisions, being by way of forfeiture and condition subsequent, are to be strictly construed and not extended beyond what was plainly the testator's intent.

[3] ID.—ATTEMPT TO PROBATE LATER WILL—GOOD FAITH—FORFEITURE CLAUSE INAPPLICABLE.—A provision in a will that if any beneficiary object to the distribution of the estate as made by the will, or attempt to defeat the provisions of the will, any gift to such beneficiary other than five dollars shall be annulled and revoked, has no application to an attempt made in good faith to probate what purports to be a later will.

[4] ID.—HEARING AND TRIAL UNNECESSARY.—Under such a forfeiture provision it is not necessary for a forfeiture that the contest be carried to the point of a hearing and trial, and where a later will is offered for probate, the subsequent withdrawal of the petition is immaterial.

[5] ID.—ATTEMPT TO PROBATE SPURIOUS WILL—IGNORANCE OF NATURE—FORFEITURE CLAUSE INAPPLICABLE.—An attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the party seeking its probate, does not fall within the forfeiture clause of the genuine will.

[6] ID.—BAD FAITH IN OFFERING SPURIOUS WILL—BURDEN OF PROOF IN DISTRIBUTION PROCEEDING.—Where distribution to a beneficiary under a will is opposed on the ground that the beneficiary had brought herself within the forfeiture clause of the will by attempting to probate a spurious later will, the burden of proof is upon the opponent to show that the beneficiary acted in bad faith, and the mere withdrawal of the petition for its probate creates no such presumption.

APPEAL from an order of the Superior Court of San Diego County distributing a portion of a legacy. W. A. Sloane, Judge. Affirmed.

The facts are stated in the opinion of the court.

John H. Bowlby for Appellant.

M. A. Luce for Respondent.

OLNEY, J.—This is an appeal from an order distributing to one Kate J. Misner a portion of a legacy left her by the decedent. The sole question is as to whether she had forfeited the legacy under a provision of the decedent's will reading as follows:

"Fourthly, it is my positive instruction that should any one or more of the beneficiaries named in this Will object to the distribution as made, or attempt to defeat the provisions of this Will that said person or persons shall receive the sum of Five Dollars ($5.00) each and no more. And any and all other provisions made herein for such objector other than the sum of Five Dollars ($5.00) as stated, shall be annulled and revoked and such person or persons shall take nothing from my estate other than the sum of Five Dollars ($5.00)."

There is no dispute as to the facts, which are:

The decedent Andrew Bergland died March 3, 1916, leaving as his heirs two sons, Charles and Louis, and a daughter, the last, the legatee mentioned whose legacy is in question. Immediately upon his death a formal instrument, attested by two witnesses, very evidently drawn by a lawyer, and making a complete disposition of the decedent's estate, was offered for probate as his will by the parties named as executors therein. Under it the sons and the daughter are all substantial beneficiaries. It likewise contains the forfeiture provisions quoted, but it does not provide for the legacy in question here. It is dated June 7, 1910, and was reaffirmed by formal codicils—otherwise immaterial here—on March 10, 1914, and December 26, 1914.

Two days after the offer of this formal will for probate, the daughter offered as being a holographic will of the decedent a writing reading as follows:

"August 29, 1915.

"i give al Money in Banks to my Dater Kate Misner when i Die.

"A. BERGLAND."

The gift made by this instrument is the legacy involved here. It is to be noted that the date of this writing is subsequent to the dates of the formal will and its codicils, and also that it makes no reference whatever to them.

Eight days after the holographic writing was presented for probate the daughter offered for probate still another instrument, dated this time December 25, 1915, which purported to dispose of practically all the decedent's property in a manner substantially different from that of the will of 1910 and more advantageous to the daughter and to appoint the daughter executrix.

No objection was made by anyone, so far as the record discloses, to the probate of the will of 1910 with its codicils, but the two sons filed formal objections to the probating of the two instruments offered by the daughter, alleging that both were forgeries and that the instrument of December 25, 1915, was the result of a conspiracy to which the daughter was a party. The daughter pressed her petition for the probate of the instrument of December 25, 1915, until it came on for trial, when she dismissed it. Later, after hearing, the will of 1910 with its codicils and the holographic writing of August 29, 1915, were both admitted to probate as constituting together the last will of the decedent.

Subsequently, the daughter petitioned for the distribution to her of the money of her father in bank at the time of his death, pursuant to the provisions of the holographic will of 1915, and this petition was opposed by the sons on the ground that under the forfeiture clause of the will of 1910 she had lost all right to this legacy by her action in seeking the probate of the spurious will of December 25, 1915. The lower court granted the petition of the daughter and from its order this appeal is taken by one of the sons.

The contention of the appellant must be overruled for two reasons:

First, the forfeiture clause contained in the will of 1910 has no application to the will of 1915 or to the legacy given by it. The will of 1915 contains no reference to that of 1910, is not a codicil to it, and so far as anything appears is wholly inde-

pendent of it, its provisions prevailing over any inconsistent provisions of the earlier will merely because, in the particular covered by it, it is a later expression of the decedent's testamentary wishes. It is true there is a general rule of testamentary construction formulated by our Civil Code (section 1320) as follows: "Several testamentary instruments, executed by the same testator, are to be taken and construed together as one instrument." But this, like any other rule of construction, is but a guide for the purpose of ascertaining the intention of the testator. It cannot be used to inject into the later instrument terms and provisions not found in it, unless by express reference in the later instrument or by necessary implication, it appear that such was the testator's intention. It is always his intention as fairly ascertained and expressed that must govern, and the code makes the rule quoted, together with other rules of construction, subordinate to this. (Civ. Code, sec. 1319.) In the case of a codicil which by its terms picks up the will previously executed, and, in effect, reaffirms it, it is apparent that the decedent's testamentary intent at the time of the execution of the codicil includes as one both the codicil and the will, with the result that, unless there is something to indicate a contrary intention, any gift made by the codicil is subject to conditions imposed by the will on the testator's gifts generally. Of this character was the codicil in the *Estate of Hite,* 155 Cal. 436, [17 Ann. Cas. 993, 21 L. R. A. (N. S.) 953, 101 Pac. 443], wherein a forfeiture clause contained in a will was held to operate because of a contest made to a codicil. [1] But here we do not have a single testamentary act covering both will and codicil, but two distinct testamentary acts occurring at different times, the later making no reference to the earlier and consisting in terms of an unqualified and unconditional bequest. There is no language, no expression of any nature, that would indicate that the testator intended that the terms of this bequest should be modified and the gift be subject to conditions elsewhere prescribed. The two wills should be read together in the sense that each should be read in the light of the other, and their terms harmonized so far as possible, but this is a very different thing from changing the express terms of the later will by importing conditions into it without express warrant contained in it, itself. We do not mean to say that a case is not possible where this may be properly done by impli-

cation only. But to justify this the circumstances must be such as fairly to show affirmatively that the testamentary intent of the decedent at the time of his last expression included not merely the matters which he then set down, but also those which he had set down on a previous occasion. (*Deppen's Trustee* v. *Deppen,* 132 Ky. 755, [117 S. W. 352].)

In the present case there is nothing to give rise to any implication that the testator when he wrote and signed the holographic will of 1915 intended to do anything different from what his language literally expresses, namely, to make an unqualified and unconditional gift to his daughter. This becomes doubly clear when we consider the character of the condition which it is sought to import and the effect such importation would have. **[2]** While it is the rule in this state that forfeiture clauses of the nature of that involved here are valid and are to be given effect according to the intent of the testator, yet it is also the rule, and a salutary one, that such a provision—being by way of forfeiture and condition subsequent—is to be strictly construed and not extended beyond what was plainly the testator's intent. In the present case the importation of the will of 1910 with its forfeiture clause into the will of 1915 would mean that the testator intended not only that his daughter should forfeit the legacy there given if she contested the disposition made by the will of 1910, but also that if any beneficiary under the will of 1910 contested the will of 1915, he or she should forfeit the testator's bounty. It is hardly conceivable that the testator, when he executed the informal and unwitnessed holographic writing of 1915 intended that if its authenticity should be questioned, by his sons for instance, they should be cut off from their inheritance. The informal and unattested nature of the instrument is such as to make such intent wholly unreasonable. Yet this result would necessarily ensue, if the appellant's contention is to be sustained. In this respect the position of the appellant and his brother is no better than that of the respondent. They have endeavored to contest the later will, and if the earlier will is to be read into it and made a part of it, the later will is protected by the forfeiture clause of the earlier, and the case of the sons comes directly within *Estate of Hite,* 155 Cal. 436, [17 Ann. Cas. 993, 21 L. R. A. (N. S.) 953, 101 Pac. 443]. The answer, both as to the daughter and as to the sons, is that such construction is not justified either by impli-

cation or by express language, and that the later will is just what it purports to be, an absolute gift to the daughter, unconditioned on the one hand by the forfeiture clause and unprotected on the other by it.

[3] Second. The forfeiture provision has no application to an attempt made *in good faith* to probate what purports to be a later will. The language of the clause is that if any beneficiary "object to the distribution [of the estate] as made [by the will], or attempt to defeat the provisions of this will," any gift to such beneficiary other than five dollars shall be annulled and revoked. If an attempt were made knowingly to probate a spurious will of a later date which purported to distribute the testator's estate in a manner different from that of the genuine will, such an attempt would quite certainly come within the language of the forfeiture clause as an attempt to defeat the provisions of the will. (*In re Kirkholder's Estate*, 171 App. Div. 153, [157 N. Y. Supp. 37].)

But it is not alleged in the present case that the daughter acted in bad faith in presenting the purported will of December 25, 1915, and seeking its probate, and no evidence on the point was introduced. It was alleged in the objection to the probate of the instrument that it was a forgery made pursuant to a conspiracy to which the daughter was a party, but this allegation is not repeated in the objections to her petition for distribution and apparently the omission is not an oversight. The expressed position of appellant's counsel is that the good faith of the daughter is immaterial, that the mere fact that she unsuccessfully endeavored to probate an instrument making a different disposition of the estate from that directed by the will of 1910 is sufficient to work a forfeiture.

It is to be noted that there is no proof in this proceeding that the instrument of December 25, 1915, was, in fact, spurious. All that appears is that the petition for its probate was withdrawn, and also the fact that a certain person was convicted of the crime of forging it. But neither the dismissal nor the criminal conviction is competent evidence in the present proceeding that it was not genuine. We, however, do not desire to rest our conclusion upon this ground, and will assume that it was spurious.

Respondent contends that proceedings taken by the daughter to probate the spurious will do not amount to a contest or to an attempt to defeat the testator's real will, that in order to

amount to this the proceedings must have been carried to the point of a hearing and trial, which was not done.  [4]  With this we do not agree.  The attempt was there, manifested by overt acts designed, and taken for the purpose of bringing about a different disposition of the estate, assuming that the instrument was known to the daughter not to be genuine. The fact that she desisted from her attempt before actually going to trial is immaterial.  The attempt was made and that is enough.  (*Estate of Hite, supra.*)  The question, therefore, reduces itself to this: Is an attempt made in good faith to probate a spurious instrument—whether such attempt is carried through to a final adjudication of the spurious character of the instrument or not—such an attempt to defeat the testator's wishes as is meant by the language of the will?

As we have already said, the forfeiture clause is to be strictly construed, that is, while it is valid and is to be enforced according to the ascertained intent of the testator, yet in ascertaining his intent no wider scope is to be given to his language than is plainly required.  The conditions upon which the forfeiture is to work under the will are two, first, in case any beneficiary "object to the distribution (of the estate) as made (by the will)," or, second, "attempt to defeat the provisions of this will."  The attempt to probate a later will cannot be said to be an objection to the distribution made by the first will.  Is it within the second condition, "an attempt to defeat the provisions of this will?"  It would certainly have the effect, if successful, of defeating those provisions.  This, however, is not a complete answer.  While the effect would be to nullify and thereby in one sense defeat the provisions of the first will, that result is but incidental and is not the primary object of the attempt to probate the purported later will, provided such attempt be made in good faith. The primary object of such an attempt is to establish what is believed to be the final expression of the decedent's testamentary wishes.  In the words "attempt to defeat" lies the idea of action taken for the purpose of defeating the provisions of the will.  A direct contest of the validity of the will would of course be such action regardless of the good or bad faith of the beneficiary, and such was the ruling in *Estate of Miller,* 156 Cal. 119, [23 L. R. A. (N. S.) 868, 103 Pac. 842]. So, also, would be an attempt to accomplish the same result indirectly, as by seeking to probate a later instrument, known

to be false. In such a case the primary purpose is to defeat the provisions of the real will. But it is easy to conceive of a beneficiary offering for probate, purely through a sense of duty to the decedent, what he believes to be the genuine expression of the testator's last desire without any purpose whatever of defeating a prior will and without any interest in defeating it. Many a child has still such regard for his parent that he or she would endeavor to establish and carry out what was believed to be the father's will, although so doing is directly contrary to his or her own material interest. In such a case there is no element of an "attempt to defeat" a prior will.

[5] It follows that an attempt in good faith to probate a later purported will, spurious in fact, but believed to be genuine by the party seeking its probate, does not fall within the forfeiture clause under consideration here.

As strengthening this conclusion, it may be worthy of note that to hold that the testator intended to forbid under penalty any attempt to probate what was genuinely believed to be a later will, would mean that he intended decidedly to limit his own freedom of subsequent testamentary action. Such penalty would seriously discourage any attempt to probate even a genuine later will, and would distinctly lessen the chance of any later testamentary expression by the testator being made effective. It is not to be presumed that he contemplated or intended any such consequence.

[6] Appellant contends that the burden rested on the respondent to show that she acted in good faith. This is not true. The fact of bad faith was an essential element of the appellant's case. The burden rested on him to show that the respondent had brought herself within the forfeiture clause, and this could not be shown without it appearing that her attempt to probate the spurious will of December 25, 1915, was in bad faith and for an ulterior object. Appellant argues that bad faith must be presumed from the fact that the respondent's petition for probate was withdrawn, and cites *In re Kirkholder's Estate,* 171 App. Div. 153, [157 N. Y. Supp. 37]. It is clear, however, that no presumption of bad faith arises from the withdrawal of the petition. It would not have arisen even if the matter had been carried to a hearing and final adjudication that the will was not genuine, unless possibly as a part of such adjudication facts were found that

proved the respondent's bad faith.    If such facts were found as a part of such adjudication, it may be that such finding would be *res judicata* as between the parties.    This was the situation in *In re Kirkholder's Estate, supra,* and therein lies the difference between it and the case at bar.

Finally, we would say that there are grave reasons of public policy why a provision for forfeiture in case of an unsuccessful but *bona fide* attempt to probate a purported later will should not be enforced.    It is the policy of the law to encourage the presentation for probate of wills of decedents in order to make the more certain that those really entitled to their bounty shall enjoy it.    To place upon one under the moral, if not the legal, obligation of probating the decedent's will the burden of gambling on his ability to do so successfully, no matter how sincere he may be, would be directly opposed to such policy.    These reasons are very different from those applicable to direct attacks upon a will, and the question is not precluded by *Estate of Hite, supra.*    It is unnecessary to put this decision upon that ground, and we do not do so. We mention the point, however, to avoid any inference that our discussion of the case solely as one of the construction of the will means that this question of public policy is not present in it.    It is present, but it is not necessary to decide it.

Order affirmed.

Shaw, J., and Lawlor, J., concurred.