[No. D002460. Fourth Dist., Div. One. Jan. 14, 1986.]

Estate of ARTHUR N. WATSON, Deceased.
VIRGIL MABRY et al., Petitioners and Respondents, v.
JO ANN ADAMS et al., Objectors and Appellants.

COUNSEL

Joyce A. McCoy, Floyd Wilkins, Jr., and Seltzer, Caplan, Wilkins & McMahon for Objectors and Appellants.

Samuel Carpenter, Alan J. Talbott and Harmsen, Carpenter & Wilkinson for Petitioners and Respondents.

OPINION

**STANIFORTH, J.**—Jo Ann Adams and Corinne Flynn appeal a judgment finding they violated a no-contest (in terrorem) clause in their father's will.

Arthur Watson and Nova Watson were married. Adams and Flynn are Arthur's daughters by a previous marriage.

Arthur Watson died on April 22, 1983. His will provided for specific bequests of $50,000 to Adams and Flynn and left "all of the rest, residue and remainder of [his] estate, both real and personal, regardless of where situated, to [his] wife, Nova L. Watson." Arthur's will also provided: "Each beneficiary under this Will, each of my heirs-at-law, and each person claiming under any of them, who at any time contests or seeks to impair or invalidate any of its provisions or joins with anyone attempting to do any such things, is hereinafter referred to as a 'contestant.' I hereby revoke every gift and all other benefits given by this Will to each person who is a contestant. I hereby expressly disinherit each of my heirs-at-law who is a contestant. All gifts under this Will to such contestant and any property of my estate to which such contestant might otherwise be entitled to receive under this Will, or pursuant to any and all laws, shall become part of the residue of my estate and shall be disposed of as if such contestant predeceased me, without issue." The sum of $70,000 was distributed to Adams and Flynn under an unopposed order for preliminary distribution. The estate lacked funds to complete the distribution.

About eight months later, on December 23, 1983, Nova Watson died. Her will provided for distribution of her estate, 15 percent to Virgil Mabry, 5 percent to Marcia Rice, 40 percent to Bill Mabry and 40 percent to Betty Davis.

On April 30, 1984, Adams and Flynn filed a creditors' claim in Nova's estate, contending she had entered into an oral agreement with Arthur sometime in 1981 before the wills for Arthur and Nova were drawn. The daughters alleged under this agreement, Arthur promised to give Nova all his property at his death except for $100,000 in specific bequests for his daughters in exchange for Nova's promise she would transfer all the Watson property to Arthur's daughters at her death. On May 1, 1984, the creditors' claim was rejected.

Adams and Flynn then filed suit on June 22, 1984, for breach of contract, constructive trust and injunctive relief against Virgil Mabry, Marcia Rice, Bill Mabry and Betty Davis. On August 10, 1984, the Nova heirs cross-complained against Adams and Flynn as well as the executor of Arthur's estate, contending Adams and Flynn violated the no-contest clause of Arthur's will by filing the creditors' claim and complaint. The Nova heirs also filed a petition for relief from the preliminary distribution in Arthur's estate.

On October 10, 1984, the court found the no-contest clause had been violated and ordered Adams and Flynn to return the distribution made to

them and to take nothing under Arthur's will. The daughters' motion for reconsideration, or alternatively, to vacate the order were later denied.

DISCUSSION

I

■ There are conflicting policies underlying enforcement of no-contest clauses. On the one hand, they are favored since they discourage litigation and give effect to the testator's intent. (*Estate of Hite* (1909) 155 Cal. 436, 439, 441 [101 P. 443]; *Estate of Black* (1984) 160 Cal.App.3d 582, 586 [206 Cal.Rptr. 663].) On the other hand, no-contest clauses are disfavored because they work a forfeiture. (*Estate of Bergland* (1919) 180 Cal. 629, 633 [182 P. 277, 5 A.L.R. 1363].) Resolution of these competing policies requires no-contest clauses be strictly construed and not extended beyond "what was plainly the testator's intent." (*Ibid.*) However, a court may not rewrite a will so as to exempt contests or legal proceedings from the scope of the no-contest clause which would frustrate the testator's purpose as expressed in his or her will. (*Estate of Friedman* (1979) 100 Cal.App.3d 810, 818 [161 Cal.Rptr. 311].)

Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used. (*Estate of Kazian* (1976) 59 Cal.App.3d 797, 802-803 [130 Cal.Rptr. 908].) The word "contest" has been variously construed to mean "any legal proceeding which is designed to result in the thwarting of the testator's wishes as expressed in his [or her] will" (*Estate of Howard* (1945) 68 Cal.App.2d 9, 11 [155 P.2d 841]); to be limited to how the word "contest" is used in the Probate Code (*Estate of Miller* (1964) 230 Cal.App.2d 888, 901 [41 Cal.Rptr. 410]); to include only challenges which seek to acquire the testator's property by intestate succession (see *Estate of Schreck* (1975) 47 Cal.App.3d 693, 697 [121 Cal.Rptr. 218]); *and to exclude proceedings to obtain property "based on a source of right independent of the will"* (*Estate of Black, supra,* 160 Cal.App.3d 582, 590, italics added) such as an action to establish a prior contract right (*Estate of Miller* (1963) 212 Cal.App.2d 284, 294 [27 Cal.Rptr. 909]). The fact a legal proceeding results in changing the distribution under a will is not in itself determinative of whether a prohibited contest has occurred. (See *Estate of Black, supra,* 160 Cal.App.3d 582, 588.) Determination must be made on a case-by-case basis. (*Id.* at p. 587.)

II

The daughters assert their creditors' claim and complaint were based on a "source of right independent of the will," that is, an oral agreement between Arthur and Nova.

■ Contracts to make a particular testamentary disposition are valid and enforceable in California. (*Redke* v. *Silvertrust* (1971) 6 Cal.3d 94, 100 [98 Cal.Rptr. 293, 490 P.2d 805], cert. den. 405 U.S. 1041 [31 L.Ed.2d 583, 92 S.Ct. 1316].) Even when the contract is oral, it may be enforceable by the intended beneficiary under the doctrine of estoppel. (*Id.*, at p. 101.) The remedy for breach of an agreement to make a will is the imposition of a constructive trust. (*Ibid.*) The remedy is not invalidation of the will; by law, a testator has a right to make any disposition of property he or she chooses and to revoke all prior wills for whatever reason but under a contract may have agreed impliedly to make a certain disposition or not to revoke. (*Ibid.*; California Will Drafting Practice (Cont.Ed.Bar 1982) § 3.6, p. 96.)

■ Here, the daughters do not seek a distribution based on the terms of the will itself or to establish that the will is any way invalid, e.g., due to fraud or undue influence (compare *Estate of Friedman, supra,* 100 Cal.App.3d 810, 818) but rather seek enforcement of a separate and distinct oral agreement. As such, their creditors' claim and complaint are based on a "source of right independent of the will." (See *Estate of Black, supra,* 160 Cal.App.3d 582, 590-592; *Estate of Miller, supra,* 230 Cal.App.2d 888, 900-902.)

Nor does it appear the daughters' filing of the creditors' claim and complaint to enforce the oral agreement is "designed to result in the thwarting of the testator's wishes as expressed in his will." (*Estate of Howard, supra,* 68 Cal.App.2d 9, 11.) The Nova heirs argue the daughters' actions do thwart Arthur's wishes expressed in his will. They argue Arthur's expressed intention was to leave the residue of his estate unconditionally to Nova, and the daughters by their actions seek to thwart this purpose by converting Nova's interest into a life interest with themselves as residual beneficiaries.

■ As noted before, we must strictly construe a no-contest clause and not extend its scope beyond "what was plainly the testator's intent." (*Estate of Bergland, supra,* 180 Cal. 629, 633.) ■ Under the will, Arthur's expressed intent was to give all his property to Nova but for $100,000 in specific bequests to his daughters. If the oral agreement is established, Arthur's expressed intent is not thwarted since under the agreement he was required to give all his property to Nova. This he did. The agreement contained no limitation on his right to give the residue of his estate to Nova. The daughters do not seek to show Arthur intended some other result in his will but that Nova failed to comply with the agreement as to a bequest to be made after *her* death. The fact Arthur did not expressly mention the oral agreement or reflect its terms in his will does not mean he intended an action

to enforce the oral agreement by his daughters to be a prohibited contest.[1] Had he intended that result, he could easily have said so since the will was executed after the oral agreement was allegedly made. (Compare *Estate of Black, supra,* 160 Cal.App.3d 582, 592; *Estate of Schreck, supra,* 47 Cal.App.3d 693, 697.) Arthur was entitled to rely on the oral agreement and Nova's promise to bequeath the Watson property to Arthur's daughters at her death.

## III

The no-contest clause of Arthur's will operates, in pertinent part, against "[e]ach beneficiary under this Will . . . who at any time contests or seeks to impair or invalidate any of its provisions."

Literally, Arthur's will prohibits a contest of a provision in the will or attempts to impair or invalidate provisions in the will. While the provision may operate against contests brought on those grounds included expressly among the grounds for opposing or revoking probate under Probate Code section 370 et seq., the provision does not specifically prohibit the commencement of any suit or action. (See *In re Kitchen* (1923) 192 Cal. 384, 387 [220 P. 301, 30 A.L.R. 1008].)

Moreover, Arthur's will does not state that claims against beneficiaries arising from independent contractual rights are prohibited as violations of the no-contest clause. Thus the forfeiture clause of Arthur's will may not even operate to preclude creditors' claims against his estate much less the estate of Nova Watson. The forfeiture clause in this case is not as broad and sweeping in ambit as the forfeiture clause in *In re Kitchen, supra,* 192 Cal. 384, 387. If Arthur had wished to preclude his daughters from asserting their contractual claims on risk of forfeiture, he could have done so. He did not, and no facts or circumstances indicate that he intended the forfeiture clause to operate against his daughters in this case.

The Nova heirs admit the claims made by the daughters do not affect the property to be included in Arthur's estate subject to disposition by his will but assert "rights to property already distributed to another beneficiary by

---

[1]For wills made on or after January 1, 1985, contracts to make particular testamentary dispositions are enforceable only if they are referred to in the will itself. (Prob. Code, § 150.) We note the fact the alleged agreement is not reflected in Arthur's will is, of course, relevant to the issue of whether such an agreement was in fact made.

the terms of [Arthur's] will.'' Thus it is a "post-disposition" claim. Moreover, the daughters' claims do not affect the amount of property in the estate subject to disposition by the will to any beneficiary and certainly not to Nova Watson. The Nova heirs cite no authority which holds that an in terrorem clause has been violated under these particular circumstances.

Thus Arthur's daughters have made no challenge to any of the provisions of their father's will. On the contrary, they have repeatedly affirmed the provisions of the will. They made no objection to probate of their father's will according to its terms. In sum, Nova heirs concede there has been "no clear and unequivocal" attack on Arthur's will. Nonetheless, they would ask this court to find that Arthur's intention was to preclude his daughters' present claim, even though no such intention is expressed; moreover no facts indicate such an intention may be implied. The case law does not provide any authority for such a finding. The daughters' creditors' claim against Nova Watson's estate is based on third-party beneficiary contract rights. It is analytically no different from any other creditors' claim against her estate. Under no theory does it raise any questions concerning the validity of Arthur's will or contest his will.

## IV

Finally, the Nova heirs assert the no-contest clause of Arthur's will should as a matter of policy insulate Nova Watson's estate from the contract claims on penalty of forfeiture. However, the policy promoted by a no-contest clause is to insure compliance with the terms of the testator's will. Such is not the issue in this case. The terms of Arthur's will are not in question; compliance with his will is not under challenge. The matters which may be brought to light by the present claim are matters regarding Nova Watson and testimony of various people regarding conversations with her. The in terrorem clause of Arthur Watson's will should not by some amorphous extension of public policy be held to shield Nova Watson's will from contest.

The issue is Nova Watson's contract and alleged breach. While the factual soundness of the daughters' contentions are not before us and we do not hint at its resolution, they are entitled to assert their contract claims against Nova Watson's estate without requirement of forfeiture in Arthur Watson's estate. They have not violated the in terrorem clause of their father's will because they have not contested their father's will nor any of its provisions.

The judgment is reversed.

Work, J., and Butler, J., concurred.