[S. F. No. 5046. In Bank.—March 31, 1909.]

In the Matter of the Estate of JOHN R. HITE, Deceased. MRS. WILLIE VIRGINIA GROVE, Appellant, v. ETTA GROSS, Respondent.

WILLS—CONDITION FOR FORFEITURE IN EVENT OF CONTEST—PUBLIC POLICY.—A condition in a will providing that if any beneficiary thereunder should contest the will the devise or bequest to him should be revoked not only is not repugnant to but is favored by public policy.

ID.—WHAT CONSTITUTES A CONTEST—ATTEMPT TO THWART WISHES OF TESTATOR.—While there are various legal significations in which the word "contest" is employed, its meaning, as employed in such a provision in a will, is to be determined from a consideration of the purposes of the testator and the end which he sought to attain. Such purpose was to prevent the invocation of any of the technical rules of law to thwart his expressed wishes; to prevent all attacks upon his character, reputation, or sanity by dragging into publicity his private life, and, equally, to secure to his named beneficiaries the fruits of his bounty. If the effect of any legal action which a contestant has taken has been to thwart the testator in any of these purposes, such action constitutes a contest of the will within its meaning.

ID.—OPPOSITION TO CODICILS BY LEGATEE—COMPROMISE—ABANDONMENT OF CONTEST.—The testator by his will left a legacy of five thousand dollars to a person who was not related to him, which by codicils expressly reaffirming and republishing the will was reduced to two thousand dollars. The legatee filed written grounds of opposition to these codicils, in which they were assailed on the grounds of non-execution, want of mental capacity, and undue influence, and after-

wards made a motion to strike out portions of the proponent's answer to her opposition. Her contest was set for hearing and the hearing continued from time to time. Finally a compromise was effected with a sister of the testator, who was a legatee in a large amount under the codicils, whereby, in consideration of such sister's promise to pay the contestant a further sum of twenty-five hundred dollars from her legacy, the contest was abandoned. *Held,* that such action on the part of the legatee was a "contest" of the will, and operated, under such condition in the will, to forfeit the legacy bequeathed her by the codicils.

ID.—MERE FILING OF WRITTEN GROUNDS OF CONTEST.—It does not follow that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest. But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest.

ID.—FORFEITURE OF LEGACY IN EVENT OF CONTEST—LACK OF GIFT OVER. —In this state, a provision in a will for the forfeiture of a legacy in the event of a contest of the will by the legatee will have that effect upon the happening of the event, notwithstanding the will did not make a gift over of the legacy in the event of a contest.

ID.—CONTEST OF CODICILS IS CONTEST OF WILL.—Where a will provides for a forfeiture of any devise or bequest therein made, in the event of a contest by the beneficiaries, and thereafter the testator executes two codicils, in each of which he expressly republishes and reaffirms the original will in every particular except as to the extent of certain legacies, a contest of such codicils by a legatee whose legacy under the original will had been reduced by the codicils, is a contest of the will, and operates as a forfeiture of the legacies bequeathed by the codicils.

APPEAL from a decree of the Superior Court of the City and County of San Francisco for the partial distribution of the estate of a deceased person. J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

Louis Titus, H. M. Wright, and W. E. Creed, for Appellant.

E. W. McGraw, for Respondent.

HENSHAW, J.—John R. Hite died April 18, 1906, leaving a large estate, and papers purporting to be a will with two codicils thereto. The will bore date July 29, 1902. By it, he gave to his sister, Lucretia V. Grove, ten thousand dollars, to

his half-brother Gabriel Hite ten thousand dollars, to Alex. Matthews and Etta Gross, children of an old friend, five thousand dollars each, to a Mrs. Stearn, five thousand dollars, to two named charities five thousand dollars each, to any person legally determined to be his widow five dollars, and all the rest and residue of his property in one-third shares to his sister Lucretia V. Grove, his nephew J. Claude Riley, and the children of his deceased sister, Mrs. Cupp, of whom appellant is one. The will contained this provision: "Twelfth:—If any of my heirs or devisees, or any one else, contests this, my last will and testament, it is my will and desire, and I declare that he, or she, or they, shall receive no part whatever of my estate, and if such an event happens, I hereby revoke any devise or bequest herein made to such contestant or contestants." On March 29, 1906, he executed a codicil to said will in which he declared the will of July 29, 1902, to be his last will and testament, and republished and reaffirmed and ordained the same with the following modifications: He gave to Alex. Matthews, Etta Gross, and Mrs. Stearn two thousand dollars each instead of five thousand dollars, revoking such five thousand dollar legacies. He gave to Mrs. Mary Grove five thousand dollars, and to a trust company in trust for the son of one Richard Blennerhassett a note held by him against said Blennerhassett. On April 16, 1906, he executed a second codicil, giving to his sister Lucretia V. Grove, a legacy of two hundred thousand dollars in place of the ten-thousand-dollar legacy originally given, and providing that such disposition should not interfere with the residuary provision already made in her behalf. He also expressly ratified and confirmed in all other respects the original will and codicil. On June 4, 1906, F. A. Berlin, the executor named in the will, filed in the superior court his petition for proof and establishment of such papers as the last will of deceased. On July 16, 1906, Etta Gross filed a paper entitled, "Contest of Codicil, dated March 29th, 1906," opposing the probate thereof as part of the will of deceased, on the ground of non-execution, want of mental capacity, and undue influence. On the same day she and J. Claude Riley, one of the residuary legatees, filed their opposition to the probate of the codicil of April 16, 1906, on the same grounds. The executor employed attorneys to meet these oppositions, and on September

19, 1906, filed his answers. Thereafter, Etta Gross and Riley made a motion that certain portions of the answers be stricken out, which motion was granted. The hearing of these contests was continued by consent several times, until finally set for January 2, 1907, for hearing. On December 26, 1906, an agreement was entered into between Etta Gross and Riley on the one side, and Lucretia V. Grove, the chief beneficiary by the second codicil, on the other, whereby Mrs. Grove agreed that there should be distributed from her legacy to Etta Gross twenty-five hundred dollars, to Matthews twenty-five hundred dollars, and to Riley forty-seven thousand dollars, and in consideration thereof, Etta Gross and Riley agreed to withdraw their opposition to the probate of the codicils. The opposition was thereupon dismissed, and the will and codicils admitted to probate without any hearing of the proposed contests, and, so far as the record on this appeal shows, without any act on the part of Etta Gross and Riley in the matter of making a contest other than those above enumerated. Appellant's counsel state several times in the briefs that a deposition of a witness was taken for use on the contest, but the record on this appeal does not so show.

In due course Etta Gross made application under a petition for partial distribution for an order of the court directing the payment to her of the legacy of two thousand dollars provided in the codicil. Mrs. Willie Virginia Grove, a residuary legatee and devisee under the will, filed written objections to the petition of Etta Gross. A general demurrer to these objections was interposed. The demurrer was sustained, the petition granted, and from that decree Mrs. Willie Virginia Grove appeals, urging that Etta Gross had forfeited all her rights under the will by reason of her contest. Whether or not such a result follows from the actions of Etta Gross, is the question here for determination.

Preliminarily, it is to be observed that a condition such as this not only does no violence to public policy, but meets with the approval of that policy. Public policy dictates that the courts of the land should be open, upon even terms, to all suitors. But this does not mean that it invites or encourages litigation. To the contrary, it deplores litigation, *Interest reipublicae ut sit finis litium,* and the great statute of frauds and perjuries and the laws limiting the time of the commence-

ment of actions, with many other of its rules and doctrines, are all designed to give repose and security by preventing litigation. However, upon this matter it is quite sufficient to quote from the opinion of this court in *In re Garcelon,* 104 Cal. 592, [43 Am. St. Rep. 134, 38 Pac. 414], which itself draws from and cites with approval *Cook* v. *Turner,* 14 Sim. 493: "In addition to this we think the principle upon which the case of *Cooke* v. *Turner,* 14 Sim. 493, was decided is sufficient to sustain the validity of this covenant, so far as relates to the question of public policy. The question in that case arose upon a condition in a will to the effect that, if a devisee should dispute the will or the competency of the testator to make it, the devise thereby given to her should be revoked. It was argued in that case that such a condition was void, as against public policy, because having a tendency to set up the wills of insane persons by restraining heirs named therein as devisees from contesting such wills; but the court, in answer to this argument, said: 'There appears to be no more reason why a person may not be restrained by a condition from disputing sanity than from disputing any other doubtful question, whether of fact or of law, on which the title to a devise or grant may depend.' And the court then, after calling attention to certain conditions which, if found in a will, would be declared void as against public policy, such as conditions in restraint of marriage or of lawful trade, proceeded to say: 'But, in the case of a condition such as that before us, the state has no interest whatever, apart from the interest of the parties themselves. There is no duty, either perfect or imperfect, on the part of an heir to contest his ancestor's sanity. It matters not to the state whether the land is enjoyed by the heir or by the devisee; and we conceive, therefore, that the law leaves parties to make just what contracts and engagements they may think expedient as to raising or not raising questions of law or fact among themselves, the sole object of which is to give the enjoyment of the property to one claimant rather than to another.' " The reasons why such provisions are upheld as part of a sound public policy cannot be more aptly stated than in the language of the supreme court of the United States in *Smithsonian Institution* v. *Meech,* 169 U. S. 398, [18 Sup. Ct. 396], where the matter was discussed in the following language: "The propositions thus

laid down fully commend themselves to our approval; they are good law and good morals. Experience has shown that even after the death of a testator, unexpected difficulties arise, technical rules of law are found to have been trespassed upon, contests are commenced, wherein, not infrequently, are brought to light, matters of private life that ought not to be made public, and in respect to which the voice of the testator cannot be heard, either in explanation or denial, and as a result the manifest purpose of the testator is thwarted. It is not strange, in view of this, that testators have desired to secure compliance with their dispositions of property and have sought to incorporate provisions which should operate most powerfully to accomplish that result. And when a testator declares in his will that his several bequests are made upon the condition that the legatees acquiesce in the provisions, the courts, rightly hold that no legatee, without compliance with that condition, shall receive his bounty, or be put in a position to use it in the effort to thwart his expressed purposes."

Such a condition then, not being repugnant to but favored by public policy, the question of paramount importance arises: Did respondent bring herself within the purview of that condition? Did she, within the meaning of the language employed by the testator, "contest his will"? It will at once be conceded that the verb "contest" is not to be construed according to its popular and primary meanings—to oppose, dispute, contend, or controvert. It is to be given legal significance. But when consideration is paid to its legal import it will be found that to it have been assigned different meanings, in accordance with the manifest intention of the statute in which it is employed. Thus, by section 1308 of the Code of Civil Procedure, where it is provided that if no one appears to contest the probate of a will, the court may admit it to probate on the testimony of one of the subscribing witnesses, and, where by section 1330 of the Code of Civil Procedure it is provided that in all cases of petitions to revoke the probate of a will, wherein the original probate was granted without a contest, a jury trial may be had, this court, in construing the latter section and in determining the rights of a contestant after probate, held that such contestant was entitled to a trial by jury where a contest before probate had been filed, a general demurrer thereto had been sustained, and the contest then

abandoned. (*Estate of Robinson,* 106 Cal. 493, [39 Pac. 862].) Upon the other hand, the Code of Civil Procedure, dealing with the subject-matter of contests, after providing that any person interested may appear and contest the will, declares, in section 1312: "Contestant to file grounds of contest and petitioner to reply." If a demurrer is interposed and sustained, the court "must allow the contestant a reasonable time" within which to amend. If the demurrer is overrruled, the petitioner must "answer contestant's grounds." Again, section 1333 of the Code of Civil Procedure provides that "If no person within one year after the probate of a will contests the same." In these latter instances, clearly, the word is employed in a different sense and means the mere filing in legal form of written grounds of opposition. (*Breeding* v. *Grantland,* 135 Ala. 497, [33 South. 544].) But this consideration need not be extended, and is had only for the purpose of establishing that there are various legal significations in which the word is employed. The basic question for determination is the meaning of the word *as employed by the testator,* and that determination is to be arrived at from a consideration of his purpose and the end which he sought to attain. Respondent contends, applying the familiar rule of strict construction where forfeiture is involved, that *contest* here means a legal opposition, pressed home to a decision, and that nothing short of this fulfils the terms of the condition subsequent. But having regard, as we must, to the controlling consideration of the purpose of the testator, can this be true? If so, then the testator contemplated permission to any disaffected heir, devisee, or legatee to use all of the machinery of the law to overthrow his wishes, to urge upon the court any of the "technical rules" which it may be thought were trespassed upon, to drag into publicity matters of the testator's private life, to assail his sanity—all to thwart "the testator's manifest purpose." And, after having done all this, if before a judicial determination has been actually rendered he has been able to force a compromise through the fears of the other beneficiaries under the will, or, failing this, has reached the conclusion that his efforts for the destruction of the instrument will prove abortive, he may dismiss his petition, receive the benefit of the testator's bounty, and be heard to declare, "I have not contested." This cannot be.

What, then, was the real purpose which the testator sought to effectuate by the simple and understandable word which he employed? For, having found that meaning, the law will give it due effect. That purpose, it seems to us, is plainly to be discerned. It was, as said by the supreme court of the United States in the Smithsonian Institution case, to prevent the invocation of any of the technical rules of law to be employed to thwart his expressed wishes; it was to prevent all attacks upon his character, reputation, or sanity by dragging into publicity his private life, and it was equally to secure to the beneficiaries whom he named, the fruits of his bounty. When it appears that the effect of the legal action which a contestant has taken has been to thwart the testator in any of these most obvious purposes, can the party, who has deliberately and designedly taken such action, be heard to say that he has not contested? We think not. Let us consider for a moment the facts here disclosed by the record. Etta Gross was not related to the testator. She had no claim whatsoever upon his bounty. By his will he left her a legacy of five thousand dollars, as a child of one of his old friends. By the contested codicils he cut this legacy down to two thousand dollars, and at the same time by one of them gave to his own sister—a natural recipient of his bounty—two hundred thousand dollars in lieu of a ten thousand dollar legacy. Etta Gross assails these codicils. She files written grounds of opposition which the law recognizes as a "contest." She subsequently invokes judicial action of the court by a motion to strike out portions of the proponent's answer to her contest. Her contest is set for hearing and the hearing from time to time continued, with the final result, which must always have been in contemplation, of forcing a compromise from the sister, who naturally stood in terror of losing her two hundred thousand dollars legacy. Can it be said that one who has thus used the machinery of the law, by methods competent and designed to work an overthrow of the testator's expressed wishes, and who has accomplished her result to the extent of taking from another legatee, by compromise, a portion of the testator's money which he had bequeathed to her, who for her personal end and gain has instituted the contest, and having accomplished her end has abandoned it,—can it, we repeat, be said that she, within the meaning of the testator's inhibition, has not contested?

Clearly it cannot. The decision of each of such cases, as it arises, must be controlled by its facts. It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest. But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest.

Respondent next urges that even if it be held that the acts of Etta Gross amount to a contest, yet, as she was a legatee and there was no gift over of her legacy in the event of a contest, no forfeiture results. It is recognized that a forfeiture of land devised will result under such circumstances without a specific devise over. That decisions in abundance may be found holding that the same rule does not apply in cases of legacy, is an anomaly of the law of wills. It rests upon no substantial distinction, and, where recognized, it is adopted in deference to the weight of earlier adjudications. It was not a part of the common law as such, but came to be recognized in England by the chancery courts, to preserve uniformity, since legacies could be sued for and recovered in the ecclesiastical courts, which followed the rules of the civil law. By the civil law the fiction was introduced that, unless there was a gift over of such legacy, a forfeiture would not be decreed. The provision for forfeiture would be construed as a mere threat, held *in terrorem* over the legatee, but not intended to deprive him of his interest. Only in the event that the will made provision for a gift over would the conclusion be adopted that the testator intended a forfeiture. For this reason, and for the added reason that it was at one time supposed that such a provision violated public policy as being "against the liberty of the law," this interpretation and construction found their way into the adjudications. The matter is learnedly discussed by Vice-Chancellor Lord Cranworth, in *In re Dickson's Trusts,* 1 Sim. (N. S.) 37, 61 Eng. Reprint 15. The codicil there revoked a legacy to a daughter in the event that she became a nun. There was no gift over. The petitioner contended that it was a universal rule that in every case of a testamentary gift of personal property with a condition subsequent there must exist an express gift over, or a forfeiture would not be

decreed. Lord Cranworth upon this expressed himself as follows: "I do not, however, think that any such rule of law exists." Reviewing the authorities, he shows that it was applied only where the condition was against contesting or in restraint of marriage, which latter was clearly in violation of public policy. In speaking of the conditions subsequent, touching contests of wills, he says: "Judges in deciding them have never felt very sure of the ground on which they were treading. It is, however, certain, that the decisions have proceeded on maxims of the civil and not the common law. . . . Inasmuch, therefore, as legacies may be sued for and recovered in the ecclesiastical courts, where the rule of the civil law would prevail, this court has felt itself bound to conform to that law in order that there might not be a conflict of decision in the two courts." The result in England has been that the courts of equity, to avoid such conflict of decision, have followed the common law, and decreed forfeitures in the case of land, and have followed the ecclesiastical courts and refused forfeitures in the case of legacies except where there was an express gift over. Many cases may be cited from the courts of this country where the decisions of England have been adopted. The supreme court of the United States, bound by the doctrines of the common law, has done so. (*Pray* v. *Belt*, 1 Pet. 670; *Parsons* v. *Winslow*, 6 Mass. 169, [4 Am. Dec. 107] ; *McIlvaine* v. *Gethen*, 3 Whart. (Pa.) 575; *Mallet* v. *Smith*, 6 Rich. Eq. (S. C.) 12, [60 Am. Dec. 107] ; *Maddox* v. *Maddox*, 11 Gratt. (Va.) 810; *Binnerman* v. *Weaver*, 8 Md. 517.) But, upon the other hand, this distinction, resting as it does upon such an insecure foundation, has by no means met with universal acceptance. (See *Hoit* v. *Hoit*, 42 N. J. Eq. 390, [59 Am. Rep. 43, 7 Atl. 856] ; *Donegan* v. *Wade*, 70 Ala. 501; *Thompson* v. *Gaut*, 14 Lea, 315; *Briethaupt* v. *Bauskett*, 1 Rich. Eq. 465; *Bradford* v. *Bradford*, 19 Ohio St. 546, [2 Am. Rep. 419].) The matter is summed up by Judge Redfield (2 Redfield on Wills, *679), in the following language: "The rule of the English law, as to conditions against disputing the will, annexed to some bequests, seems to be in a most absurd state of confusion. It is held such a condition is void, as to personalty, unless the legacy be given over in the event of a failure to perform the condition. But that such a condition is entirely valid as to real estate, whether there be any gift over or not.

And it is agreed that there is no substantial ground for any distinction in this respect, between real and personal estate. Hence we assume that in this country, any such condition, which is reasonable, as one against disputing one's will surely is, as nothing can be more in conformity to good policy, than to prevent litigation, will be held binding and valid." In this state the question is *res integra.* We are not embarrassed in its consideration by any adjudication of our own, and are at liberty to decide in accordance with sound reason. If it be that the rule anciently rested for its support upon the doctrine of public policy, we find, even in England, where the rule prevails, that such support has been withdrawn. If it rests, as it seems to have rested in England, upon the desire of the chancery court to conform to the decisions of the ecclesiastical court, such a reason does not in this state obtain. In brief, no reason can be shown why such a rule, founded neither upon public policy nor the dictates of the common law, should by us be given recognition. The reason which may have existed in other jurisdictions does not here exist, and in the absence of the reason the rule itself should not be followed.

It is next urged by respondent—invoking the rule of the strict construction of forfeitures and the provision of the code (Civ. Code, sec. 1342)—that a testamentary disposition, when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose; that the provision against contests applied to the *will* and not to the *codicils,* and that in contesting the codicils, therefore, the respondent did not contest the will; or, again, that the inhibition against contesting the will applied to the *whole* will, and that the contest of the codicils as *part* of the will was not a contest of the will as a whole. Upon the first proposition cases are cited, notably that of *Sloane* v. *Stevens,* 107 N. Y. 122, [13 N. E. 618], where, under the peculiar circumstances, the language of a will was not extended to apply to a codicil. In the case instanced, the language of the will was: "I hereby release all claims or demands which I have at my death against any person or persons named in this will." The court held, for reasons given, that this language did not operate to release a debtor not named in the body of the will, but named in a different connection in a later codicil thereto. In like manner in *Alsop's Appeal* and *Riley Appeal,* 9 Pa. St.

374, it was held, under the language of the will which divided the residue of the estate *pro rata* amongst legatees therein named, that when by a subsequent codicil he gave specific legacies to other persons, they were not let in to share in the residue. The citation of such cases might be indefinitely multiplied, but they are of little value, for, as was also well said by the court of appeals of New York (*Collister* v. *Fassitt,* 163 N. Y. 286, [79 Am. St. Rep. 586, 57 N. E. 490]: "It is a trite saying that no will has a brother, and it may also be said that the citation of numerous authorities in most instances is of little assistance to the court, as each will must be construed in the light of the peculiar surrounding circumstances, the scheme disclosed, the language employed, and the intention of the testator gathered from the general situation." The general rule, of course, is as expressed by the Pennsylvania court in the case cited: "Though for some purposes a will and codicil are to be regarded as making but one statement, they will not be considered as a single instrument, where a *manifest intention* requires otherwise." In all of these cases the courts were striving to arrive at the meaning, purpose, and intent of the testator as found expressed in the will. What was the purpose and intent of the testator in the case of the will under consideration? So far as language goes, in both codicils he declares that he has reread, reconsidered, reordained, and republished, ratified and confirmed his will as of the dates respectively of the codicils. Thus the language of the codicils merely modifies the original will to the extent of the legacies, but expressly reaffirms it in every other particular. By such language the codicils become as much an integral part of the will as though their purport had been expressed in one of the original clauses thereof. Moreover, the purpose which the testator sought to subserve, as before discussed, forbids as well a contest of any part as of the whole. The same reasons moving him to forbid a contest in the one case, would operate in the other. It is concluded therefore that neither of the positions of respondent in this regard is tenable.

This discussion covers all the propositions advanced by the respondent which seem to call for consideration, and, for. the reasons given, the court erred in overruling the demurrer to appellant's written opposition to the petition for partial distribution on behalf of respondent Etta Gross.

The decree of partial distribution is reversed, with directions to the trial court to overrule the demurrer to the written opposition of Mrs. Willie Virginia Grove.

Melvin, J., Shaw, J., and Sloss, J., concurred.

Rehearing denied.