143 Cal.App.2d 820 (1956)
Estate of ALICE I. FULLER, Deceased. ELIZABETH FULLER PIERRONG, Appellant,
v.
ANTOINETTE FULLER McMUNN et al., Respondents.
Civ. No. 21701. 
California Court of Appeals. Second Dist., Div. Three. 
Aug. 15, 1956.
 Hahn & Hahn and Allyn H. Barber for Appellant.
 John C. Mead and Noren Eaton for Respondents.
 VALLEE, J.
 Appeal from part of a decree of distribution. The question is whether Antoinette Fuller McMunn forfeited her rights under the will of the deceased by contesting or attacking or opposing the will, or in seeking to impair or invalidate any of its provisions, or in endeavoring to succeed to part of the estate otherwise than through the will.
 Alice I. Fuller died testate on October 13, 1952. Her will left the residue of the estate in trust with directions to pay the income to Mrs. McMunn for life. It contained this in terrorem provision:
 "If any devisee, legatee or beneficiary under this will, or any person claiming under or through any devisee, legatee or *822 beneficiary, or any other person who, if I died wholly or partly intestate would be entitled to share in my estate shall, in any manner whatsoever, directly or indirectly, contest this will or attack, oppose or in any manner seek to impair or invalidate any provision thereof, or shall, in any manner whatsoever, conspire or cooperate with any person or persons attempting to do any of the acts or things aforesaid, or shall settle or compromise directly or indirectly, either in or out of court, with any such contestant, or shall acquiesce in or fail to oppose such proceedings, or shall endeavor to succeed to any part of my estate otherwise than through this will, then in each of the above mentioned cases, I hereby bequeath to such person or persons the sum of One Dollar ($1.00) only, and all other bequests, devises and interests in this will given to such devisees, legatees and beneficiaries shall be forfeited and shall be distributed pro rata among such of my devisees, legatees and beneficiaries as shall not in any manner have participated in, and as shall have opposed such acts or proceedings. If all of my devisees, legatees and beneficiaries shall participate in or fail to oppose such proceedings, I give, devise and bequeath the whole of my estate to my heirs-at-law according to the laws of succession of the State of California then in force, excluding all contestants and said devisees legatees and beneficiaries and their successors in interest."
 On October 23, 1952, the executrix and executor named in the will petitioned for probate, and notice of the hearing was duly posted and published. Prior to the hearing and on November 18, 1952, Mrs. McMunn filed written grounds of opposition to its probate and caused a citation to be issued. In the opposition she alleged unsoundness of mind, want of due execution, and undue influence exercised by Elizabeth Fuller Pierrong, her daughter and granddaughter of the deceased.
 On November 21, 1952, the court set the contest for trial for February 26, 1953. On January 16, 1953, the executrix and the executor filed a general and special demurrer to the opposition and a motion to strike the entire document and various parts thereof. At the hearing of the demurrer and the motion to strike on January 23, 1953, by stipulation the motion to strike was granted except as to two paragraphs thereof and the demurrer was ordered off calendar. On February 20, 1953, Mrs. McMunn filed a dismissal of the opposition.
 The will was thereafter admitted to probate and an executrix *823 and executor appointed. The executor later resigned. The petition for final distribution of the estate stated that the will devised and bequeathed the residue in trust to pay the income to Mrs. McMunn for life, alleged she had filed a contest of the will in which she opposed its admission to probate and that by filing the contest she forfeited her right to participate as beneficiary under the trust. Mrs. McMunn filed objections to the petition, alleging the contest was dismissed before an answer had been filed and a trial of the issues had, and that she was entitled to the income from the trust. The court sustained the objections; found that by reason of the fact the contest did not proceed to trial and judgment Mrs. McMunn did not contest the will or attack or oppose or in any other manner seek to impair or invalidate any provision of the will or endeavor to succeed to any part of the estate other than through the will; concluded she had not forfeited her right to take under the will; and distributed the income of the trust to Mrs. McMunn for life. Miss Pierrong appeals from that part of the decree ordering the trustee of the trust to pay the income thereof to Mrs. McMunn for life.
 Miss Pierrong contends Mrs. McMunn violated the in terrorem provision of the will and thereby forfeited all rights thereunder. Mrs. McMunn claims the document she filed was a mere "paper contest," and since she dismissed before trial she does not come within the purview of the in terrorem provision.
 [1] It is a cardinal rule of construction that the intent of the testatrix, as manifested by the terms of the will, must be given effect. [2] The property of a testatrix is hers to dispose of as she wills, and she is not called on to consult or follow the wishes or views of her heirs or beneficiaries or of courts or juries. (In re Spencer, 96 Cal. 448, 452 [31 P. 453]; Estate of Markham, 46 Cal.App.2d 307, 314 [115 P.2d 866].) [3] The testatrix was free to dispose of her property on whatever condition she wished to impose so long as the condition was not prohibited by law or opposed to public policy. [4] She could give or refrain from giving, and could attach to her gifts any lawful condition which her reason or caprice might dictate. [5] She was disposing of her own property and the beneficiary claiming thereunder must take the gift, if at all, on the terms offered. (Estate of Miller, 156 Cal. 119, 121 [103 P. 842, 23 L.R.A.N.S. 868]; In re Kitchen, 192 Cal. 384, 389 [220 P. 301, 30 A.L.R. 1008]; Estate of Markham, 46 Cal.App.2d 307, 314 [115 P.2d 866].) *824
 [6] A provision in a will providing for forfeiture of a legacy or devise in the event of a contest of the will by a legatee or devisee is valid and binding on such legatee or devisee. (Estate of Hite, 155 Cal. 436, 439 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A.N.S. 953]; Lobb v. Brown, 208 Cal. 476, 484 [281 P. 1010]; Estate of Markham, 46 Cal.App.2d 307, 314 [115 P.2d 866]; Estate of Howard, 68 Cal.App.2d 9, 11 [155 P.2d 841].) [7] An in terrorem provision in a will is not against public policy and must be enforced as written. (In re Garcelon, 104 Cal. 570, 590 [38 P. 414, 43 Am.St.Rep. 134, 32 L.R.A. 595]; Estate of Hite, 155 Cal. 436, 439-441 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A.N.S. 953]; Estate of Miller, 156 Cal. 119, 121-122 [103 P. 842, 23 L.R.A.N.S. 868].) [8] An in terrorem clause is to be strictly construed. [9] "The rule that a forfeiture clause is to be strictly construed means simply that no wider scope is to be given to the language employed than is plainly required. It does not require the court to put a strained or overtechnical construction upon the language employed, ignoring the essence of the condition imposed upon the legacy and refusing to give effect to the lawful intention of the testatrix to enable a legatee to affirm a will so far as it is to her own profit and at the same time repudiate the validity of its provisions which are for the benefit of others. No artificial distinctions are to be taken advantage of or quibbling indulged in to the end that a person plainly and palpably coming within the scope of the forfeiture clause may by 'some hook or crook' escape the penalty of forfeiture." (In re Kitchen, 192 Cal. 384, 389 [220 P. 301, 30 A.L.R. 1008].) [10] Whether there has been a contest within the meaning of the language used in a will is to be determined according to the circumstances in each case. (Estate of Mathie, 64 Cal.App.2d 767, 776 [149 P.2d 485].)
 [11] The contention that because the grounds of opposition to probate of the will were dismissed after the hearing of the motion to strike and were not brought to trial there was no contest is answered by Estate of Hite, 155 Cal. 436 [101 P. 443, 17 Ann.Cas. 993, 21 L.R.A.N.S. 953]. The will in that case merely said that if anyone contests my will he shall receive no part whatever of my estate and any bequest or devise is revoked. Before probate one of the legatees named in the will filed a contest of a codicil on the ground of nonexecution, want of mental capacity, and undue influence; and she and another legatee filed a contest of a second codicil *825 on the same grounds. Answers were filed. The contestants filed a motion to strike parts of the answers. Before the motion was heard the chief beneficiary under the second codicil agreed to pay the contestants more than they were bequeathed by the codicils but less than they were bequeathed by the will. The opposition was thereupon dismissed and the will and codicils admitted to probate. The probate court held that the legatees had not contested the will. The opinion of the Supreme Court reversing the probate court is so directly applicable to the case at bar that we are constrained to quote at length from it. The court said (p. 441):
 "Such a condition then, not being repugnant to but favored by public policy, the question of paramount importance arises: Did respondent bring herself within the purview of that condition? Did she, within the meaning of the language employed by the testator, 'contest his will'? It will at once be conceded that the verb 'contest' is not to be construed according to its popular and primary meanings--to oppose, dispute, contend, or controvert. It is to be given legal significance. ..."
 "[P. 442.] The basic question for determination is the meaning of the word as employed by the testator, and that determination is to be arrived at from a consideration of his purpose and the end which he sought to attain. Respondent contends, applying the familiar rule of strict construction where forfeiture is involved, that contest here means a legal opposition, pressed home to a decision, and that nothing short of this fulfills the terms of the condition subsequent. But having regard, as we must, to the controlling consideration of the purpose of the testator, can this be true? If so, then the testator contemplated permission to any disaffected heir, devisee, or legatee to use all of the machinery of the law to overthrow his wishes, to urge upon the court any of the 'technical rules' which it may be thought were trespassed upon, to drag into publicity matters of the testator's private life, to assail his sanity--all to thwart 'the testator's manifest purpose.' And, after having done all this, if before a judicial determination has been actually rendered he has been able to force a compromise through the fears of the other beneficiaries under the will, or, failing this, has reached the conclusion that his efforts for the destruction of the instrument will prove abortive, he may dismiss his petition, receive the benefit of the testator's bounty, and be heard to declare, 'I have not contested.' This cannot be. *826 "
 "What, then, was the real purpose which the testator sought to effectuate by the simple and understandable word which he employed? For, having found that meaning, the law will give it due effect. That purpose, it seems to us, is plainly to be discerned. It was, as said by the supreme court of the United States in the Smithsonian Institution case [Smithsonian Institution v. Meech, 169 U.S. 398 (18 S.Ct. 396, 42 L.Ed. 793)], to prevent the invocation of any of the technical rules of law to be employed to thwart his expressed wishes; it was to prevent all attacks upon his character, reputation, or sanity by dragging into publicity his private life, and it was equally to secure to the beneficiaries whom he named, the fruits of his bounty. When it appears that the effect of the legal action which a contestant has taken has been to thwart the testator in any of these most obvious purposes, can the party, who has deliberately and designedly taken such action, be heard to say that he has not contested? We think not. Let us consider for a moment the facts here disclosed by the record. Etta Gross was not related to the testator. She had no claim whatsoever upon his bounty. By his will he left her a legacy of five thousand dollars, as a child of one of his old friends. By the contested codicil he cut this legacy down to two thousand dollars, and at the same time by one of them gave to his own sister--a natural recipient of his bounty--two hundred thousand dollars in lieu of a ten thousand dollar legacy. Etta Gross assails these codicils. She files written grounds of opposition which the law recognizes as a 'contest.' She subsequently invokes judicial action of the court by a motion to strike out portions of the proponent's answer to her contest. Her contest is set for hearing and the hearing from time to time continued, with the final result, which must always have been in contemplation, of forcing a compromise from the sister, who naturally stood in terror of losing her two hundred thousand dollar legacy. Can it be said that one who has thus used the machinery of the law, by methods competent and designed to work an overthrow of the testator's expressed wishes, and who has accomplished her result to the extent of taking from another legatee, by compromise, a portion of the testator's money which he had bequeathed to her, who for her personal end and gain has instituted the contest, and having accomplished her end has abandoned it,--can it, we repeat, be said that she, within the meaning of the testator's inhibition, has not contested? Clearly it cannot. The decision of each of such cases, *827 as it arises, must be controlled by its facts. It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest. But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest."
 Said the court in Estate of Bergland, 180 Cal. 629 (p. 634 [182 P. 277, 5 A.L.R. 1363]):
 "Respondent contends that proceedings taken by the daughter to probate the spurious will do not amount to a contest or to an attempt to defeat the testator's real will, that in order to amount to this the proceedings must have been carried to the point of a hearing and trial, which was not done. With this we do not agree. The attempt was there, manifested by overt acts designed and taken for the purpose of bringing about a different disposition of the estate, assuming that the instrument was known to the daughter not to be genuine. The fact that she desisted from her attempt before actually going to trial is immaterial. The attempt was made and that is enough. (Estate of Hite, supra [155 Cal. 436].)"
 Estate of Markham, 46 Cal.App.2d 307 [115 P.2d 866], says (p. 315):
 "That appellant sought to impair, invalidate and set aside the provisions of the will; attempted to establish claims to part of the estate other than under the will; sought to defeat and change the testamentary plan, as well as to secure or take part of the estate other than through or under the decedent's will, is abundantly established by reference alone to the bill in equity filed in the United States District Court and the action filed in the Superior Court of Los Angeles County. By her complaint in the last named action appellant alleged that at the time decedent signed the will 'he was approximately eighty years old, in an advanced stage of senility, suffering from an incurable disease, and utterly incompetent to understand and comprehend what he was doing or the meaning of any sort of business transaction.' She further alleged that the will was procured by fraudulent misrepresentations; that the will was not a true one but a document altered by certain of the defendants after its execution; and finally, that the will was admitted to probate on perjured testimony. She also charged that by fraudulent representations *828 of some of the defendants she was prevented from filing a contest of the will within the statutory period. By her prayer in said complaint appellant sought to have the defendants declared trustees for her to the extent of one-third of the assets belonging to decedent at the time of his death. We cannot conceive of a more outright and direct attack upon the validity of the will, or a more positive effort, in violation of the forfeiture clause therein, to 'set aside the probate of this will, impair, invalidate, or set aside its provisions, or to have the same or any part thereof, or any devise or devises or trusts herein limited declared void or diminished,' or to 'defeat or change any part of the testamentary plan' or endeavor 'to secure or take any part of my estate in any manner other than through or under this will,' any one of which attempts would bring appellant within the purview of the disinheriting clause."
 In Estate of Howard, 68 Cal.App.2d 9 [155 P.2d 841], Mr. Justice McComb wrote (p. 11):
 "The word 'contest' as used in a forfeiture provision in a will means any legal proceeding which is designed to result in the thwarting of the testator's wishes as expressed in his will."
 In Estate of Lynn, 109 Cal.App.2d 468 [240 P.2d 1001], the court declared (p. 472):
 "When the testatrix said 'if any ... beneficiary ... shall ... object to any of the provisions hereof' she thereby, in substance, demanded acquiescence by her beneficiaries in the provisions of the will as such provisions appeared on its face."
 In Swift v. Superior Court, 39 Cal.2d 358 [247 P.2d 6], a petition for probate of a lost or destroyed will was filed. Certain heirs at law of the deceased "filed answers denying many allegations of the petition, including soundness of mind, lack of duress, fraud or undue influence, due execution and existence of the instrument, its fraudulent destruction, and the contents thereof, and praying that the purported will be denied probate." The court said (p. 361):
 "It is contended that the 'answers' to the petition for probate do not constitute a 'contest' of the will. This contention cannot be sustained. Section 370 of the Probate Code provides that: 'Any person interested may contest the will by filing written grounds of opposition to the probate thereof at any time before the hearing of the petition for probate, ...' *829 In order to give any effect to these 'answers,' they must be deemed 'written grounds of opposition.' "
 The Restatement says:
 "The commencement of a will contest, upon any of the grounds stated in Comment c, ['improper execution, undue influence, fraud or lack of testamentary capacity'] constitutes a violation of the restraint regardless of its subsequent withdrawal, whether that withdrawal take place immediately after the commencement of the litigation, prior to hearing, at the trial, or thereafter, in the absence of specific language to the contrary." (Rest., Property, 428, com. d.) There was no showing that the filing of the contest in the present case was designed solely to procure time within which to ascertain the facts on which a decision to contest would rest assuming, without deciding, that the mere filing of such a contest would not constitute the commencement of a contest as respondent argues. The will was offered for probate on October 23, 1952. The opposition was filed November 18, 1952. It was not until three months later, on February 20, 1953, after a large part of the opposition had been stricken, that it was dismissed.
 The wording of the in terrorem provision of Mrs. Fuller's will is broad, definite, and explicit. It was drawn by a lawyer. It says that:
 If any beneficiary shall in any manner whatsoever, directly or indirectly,
 It cannot be said that the opposition to probate of the will did not bring Mrs. McMunn within the purview of these prohibitions. To do so would be to disregard plain language and the intention of the testatrix evidenced thereby. It would be to say that Mrs. McMunn did not "directly or indirectly" "contest," "attack," "oppose," or "in any manner seek to impair or invalidate" the will. It would be to say that she did not endeavor to succeed to any part of the estate otherwise than through the will.
 Mrs. McMunn says this was a mere "paper contest." She relies on the dictum in Estate of Hite, supra, 155 Cal. 436, *830 that "It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest." She ignores the sentence immediately following which says, "But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest." Estate of Hite does not tell us what a "paper contest" is, and it is not necessary in the present case to decide what sort of a contest would constitute a mere "paper contest." This was manifestly not such a contest. It was the use of the appropriate machinery of the law to thwart the expressed wishes of the testatrix. Mrs. McMunn charged: her mother, the deceased, was not of sound mind at the time the will was executed; her mental faculties had become so impaired she was easily and unduly influenced by those in whom she had confidence, particularly Mrs. McMunn's daughter, Miss Pierrong, who completely dominated her grandmother; Miss Pierrong succeeded in substituting her will for the will of the deceased; the purported will was not the free and voluntary act of the deceased. The prayer was that the will be not admitted to probate. The grounds of opposition were verified by Mrs. McMunn one month after her mother's death. In view of the dismissal of the contest and the admission of the will to probate, it must be assumed there was not a scintilla of justification for basing a contest on any one of the grounds alleged. The effect of the opposition, had it been successful, would have been to defeat the intentions of the testatrix and to give Mrs. McMunn a much larger part of the estate than she was given by the will.
 Mrs. McMunn attacked the validity of the will; she sought to have it declared void. She besmirched the reputation of the testatrix, her mother, when she was no longer alive to defend herself, and paraded the family skeletons after her death. As said in Estate of Markham, 46 Cal.App.2d 307 [115 P.2d 866], we cannot conceive of more outright and direct attack upon the validity of the will, or a more positive effort, in violation of the forfeiture clause to contest this will or attack, oppose or in any manner seek to impair or invalidate any provision thereof, or endeavor to succeed to any part of the estate otherwise than through this will.
 Construing the in terrorem provision in the present case as strictly as may be, when we read it according to the plainly *831 expressed intent of the testatrix, the conclusion is inescapable that Mrs. McMunn brought herself under its ban. The intent of the testatrix is so clearly and definitely expressed as to allow no room for any other construction than that it was her intent, in the event a contest of the nature of that in the present case were filed by a legatee under the will, the legacy of such beneficiary should be reduced to $1.00. It would be allowing the intention of the testatrix to be overthrown by indulgence in very finely drawn distinctions to say that one who invokes the aid of a court in opposition to the probate of a will of the character of that at bar does not in a very obvious sense "contest," "attack," "oppose," or "in any manner seek to impair or invalidate" any of its provisions. We see no escape from the conclusion that the testatrix by the use of the language employed, which is extremely broad, intended to penalize the commencement of a contest of the nature of that filed by Mrs. McMunn.
 The part of the decree appealed from is reversed.
 Shinn, P. J., and Wood (Parker), J., concurred.