[No. F053942. Fifth Dist. Oct. 16, 2008.]

ROBERT SCHWARTZ, Plaintiff and Appellant, v.
NICOLETTE SCHWARTZ, as Trustee, etc., Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

## COUNSEL

Darling & Wilson and Joshua G. Wilson for Plaintiff and Appellant.

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Catherine E. Bennett, Joseph D. Hughes and Joshua D. Meier for Defendant and Respondent.

OPINION

**VARTABEDIAN, Acting P. J.**—Appellant Robert Schwartz appeals from the September 11, 2007, order denying his petition for an order directing distribution of trust property and granting the petition of respondent Nicolette Schwartz, as Trustee of the Adolf W. Schwartz and Chris Edda Schwartz Living Trust of 1987, to invoke the no contest clause of the trust. The published portion of this opinion discusses the continuing ramifications of a petition such as appellant's, even after its claimed withdrawal. We affirm.

## FACTS AND PROCEEDINGS

On July 21, 1987, Adolf W. Schwartz and Chris Edda Schwartz (jointly, the settlors) executed the Adolf W. Schwartz and Chris Edda Schwartz Living Trust of 1987. In the succeeding 12 years, the settlors amended their trust agreement four times. The settlors executed the fourth amendment, a restatement of the entire trust agreement, on October 24, 1995. The settlors subsequently executed two more amendments, one of them nominating their daughter, respondent, as successor trustee upon their deaths. Appellant is the son of the settlors.

Settlor Chris Schwartz died in 1998 and the trust estate was divided into three separate trusts—a survivor's trust, a marital trust, and a residual trust. Surviving settlor Adolf Schwartz (hereafter Schwartz) allocated his one-half interest in the community property and all of his separate property to the survivor's trust. The trust agreement gave Schwartz a power of appointment over the survivor's trust and stated that power could be exercised by will, codicil, or other written instrument. Under the terms of the agreement, any assets of the survivor's trust that were not appointed would pass to the residual trust upon Schwartz's death. The marital trust was funded with a specific amount calculated for federal estate tax purposes and, upon Schwartz's death, any assets remaining in the marital trust were to be allocated to the residual trust. The balance of the trust estate was allocated to the residual trust. Upon the death of the surviving settlor, the trustee was to divide the residual trust into five separate shares and distribute one equal share to each of the following: appellant, respondent, Lynda Dickey, and Kevin Cooper. The trust directed the successor trustee to distribute the fifth and final share to specified charities.

On February 1, 2000, Schwartz executed a new will, exercised his power of appointment, and directed that upon his death his residence and $200,000 in cash be distributed from the survivor's trust to his new spouse, Lydia Schwartz. He also made a $10,000 gift to one Jana Stukanov, directed the sale of his stamp collection, and further directed that the balance of the

survivor's trust be divided equally between appellant and respondent. Schwartz executed three codicils to his February 2000 will. In the first codicil, executed September 14, 2000, he corrected directions regarding the devise of the residence to Lydia Schwartz and generally reiterated the distributions set forth in his will. In the second codicil, executed January 31, 2001, Schwartz amended the distributive provisions in the event appellant or respondent failed to survive him. In the third codicil, a holographic document executed December 8, 2005, Schwartz revoked prior amendments to his will and restated the devise of the residence to Lydia. In addition, Schwartz (1) increased Lydia's cash distribution to $250,000; (2) provided distributions to his brother-in-law, John Stukanov; (3) recited that certain inter vivos cash gifts to appellant were to be considered part of appellant's inheritance; and (4) made specific distributions to respondent. Schwartz maintained the equal division of remaining assets to appellant and respondent.

Schwartz died on April 26, 2006, and respondent became the successor trustee of the trust. On August 17, 2006, appellant filed an application for determination of whether a petition for order directing distribution of property from the inter vivos trust would be a "contest" under Probate Code section 21320 (hereafter the application). Appellant attached to his application a copy of the proposed petition for order directing distribution of property (hereafter appellant's petition). In that petition, appellant sought a court order directing respondent to divide the property of the survivor's trust equally between appellant and respondent "without giving any force or effect to the Holographic Will."

On September 1, 2006, without waiting for a ruling on his application, appellant filed his actual petition.

On October 5, 2006, the court held a hearing on appellant's application and petition and continued the matter to December 7, 2006, to allow respondent to review the pleadings and to file objections. On November 6, 2006, respondent filed a response to appellant's petition and an objection to the application. The response asserted that appellant's petition constituted a contest under the terms of the trust agreement. The response, as well as the objection, noted that the application was moot because appellant had filed his petition without waiting for a court order on the application.

At the December 7, 2006, hearing, the court continued the matter to January 18, 2007, because appellant had not served notice on certain beneficiaries. On December 18, 2006, appellant filed a notice of withdrawal of his petition, stating:

"Petitioner ROBERT SCHWARTZ hereby withdraws his Petition for Order Directing the Successor Trustee to Distribute Trust Property as Provided

Under the Terms and Conditions of the Survivors Trust (the 'Petition') presently scheduled for hearing on January 18, 2007 . . . .

"The Petition was filed subsequent to the filing of an Application which seeks a judicial determination as to the effect, if any, pursuing legal action on the Petition will have on Petitioner under the no contest clause of the Adolph [*sic*] W. Schwartz and Chris Edda Schwartz Living Trust of 1987, as amended and restated (the 'Trust'). The Petition was filed with the understanding that the Court's initial determination on the Application could affect Petitioner's decision as to whether or not to move forward on the Petition. To avoid any confusion or argument, Petitioner is simply withdrawing the Petition without prejudice to subsequent filing."

On January 18, 2007, the court conducted a hearing, and counsel for respondent and appellant argued their positions as to the question of mootness of the application. Respondent's counsel stated: "Now, I understand that the applicant is going to argue and has argued that they . . . in response to our opposition, they simply withdrew the petition. [O]ur position on that is that's completely ineffective, because that completely voids the policy behind the no contest clause." Appellant's counsel maintained: "[U]ntil there's a determination or you proceed moving forward with the underlying petition, which now has been withdrawn . . . there is no action pending before the court." Respondent's counsel responded: "That makes no sense, your Honor. Because, again, at what point can a contestant withdraw a petition and say, Well, I was just kidding? I'm sorry I exposed the trust or will probate estate to litigation expenses. But I don't like how the outcome is looking so I'm gonna withdraw the petition." The court did not rule on the purported withdrawal but, instead, instructed appellant's counsel to give notice to all beneficiaries and to file all related estate planning documents with the court. The court then continued the matter to March 8, 2007.

On March 8, 2007, appellant's counsel maintained: "We withdrew the petition, and, of course, are taking the position that it does not affect the application." Respondent's counsel argued:

"Because when you file the application and you attach the petition, procedurally that's what you do. And [the] Probate Code allows you to do that. The Probate Code defines a contest as filing a petition, seeking relief in the proceeding. The trust itself says in the no contest clause that if somebody seeks an adjudication . . . that is the contest.

"So when the petitioner filed on September 1st the underlying petition, that's it. The bell was rung, so to speak. And then it actually came up for hearing the beginning of October. We appeared at that time not only on the

application but also on the underlying petition. The court ordered us to file objections to both, which we did. So we filed an objection to the application. We also had to file an objection to the underlying petition. Those were on file the beginning of November. And then it wasn't until December when it was actually withdrawn."

The court asked appellant's counsel whether the filing of appellant's petition was due to inadvertence or anything akin to the scenarios permitting relief under Code of Civil Procedure section 473. Appellant's counsel responded in the negative and frankly admitted, "We were well aware of the fact that the petition was being filed." With respect to the withdrawal of appellant's petition, appellant's counsel explained, "[O]ur withdrawal was as a result of their pleadings saying, Well, look. You—the application is now moot because you have filed the underlying petition. So we simply withdrew that." Upon further questioning, appellant's counsel said, "My actual thinking on doing that [filing the actual petition before the court ruled upon the application] was we have the application. That's gonna be set for hearing. If we then file the petition, it will be set for a subsequent date. I had no idea they'd be set concurrently on the same date . . . ."

The court then asked appellant's counsel why he filed appellant's actual petition when he had already attached the proposed petition to the application. Appellant's counsel explained: "It's my thought when it was done—and it was done with knowledge—was that all I'm doing is really advancing a hearing date on the underlying petition. Because my thought was, in all honesty, it clearly is not an action that would trigger the no contest provision. So assuming that at the original hearing the court would agree with my position, I would then have a subsequent hearing date already set on the underlying petition. So that was—although certainly flawed in retrospect, that was my logic for pursuing those things the way I did."

After hearing further argument from respondent's counsel, the court denied appellant's application, stating in pertinent part:

"It appears to me that once the petition was filed, it takes it out of the safe harbor provision that's provided by the Probate Code. I mean, I don't know any other way—and this is the court's thinking. And I'm making the record on this. So if you want someone else to review it, which I presume you would, the court will know what went into the decision on this. Because I think the safe harbor provision under the statute is put there for that specific reason, so that it can keep you or the petitioner from taking the next step and putting into issue the very thing that they wanted to get a determination on before they did that.

"So I think that application was superseded by the petition. And to go back to the analogy that I made at the outset, the bell has been rung and it can't be unrung. . . ." The court concluded the filing of appellant's petition brought section 14.10 of the trust agreement ("Contest of Trust or Will") into play and the court sustained respondent's objection on that basis. On April 28, 2007, the court filed a formal order denying appellant's application.[1]

On May 24, 2007, the court conducted a contested hearing on respondent's petition to invoke the no contest clause. Respondent's counsel maintained that appellant's petition prayed for an equal division of survivor's trust assets between respondent and appellant, thereby nullifying an integrated estate plan and excluding other stated beneficiaries of the trust estate. Respondent's counsel further maintained appellant's petition constituted a contest under the terms of the trust agreement as well as a contest under the provisions of the Probate Code.

In response, appellant's counsel asserted the third codicil did not effectively exercise a power of appointment over the assets of the survivor's trust. He explained, "[T]he sole issue that Robert Schwartz is seeking to have the court address is whether the language in the 2005 holographic document is an effective exercise of the power of appointment provisions. That's all we've ever asked for." He further explained that an interpretation or determination of specific language is not a contest under Probate Code section 21305, subdivisions (a) and (c). The court later asked whether appellant was seeking a determination as to the validity of the third codicil. Appellant's counsel responded: "No. We're just asking—the petition is just focusing on whether—not the holographic will in its entirety, just the language that attempted to exercise the power of appointment provisions given to Dr. Schwartz in the survivor's trust." At the conclusion of the hearing, the court took the matter under submission.

On June 26, 2007, the court filed a ruling, stating in pertinent part:

"In the Petition, Petitioner, a Trust beneficiary, asks the Court not to give 'force or effect' to the third codicil because, he asserts, the holographic third codicil is not authorized by the Trust. Thus, he asks the Court to disregard it and instead to impose the terms of the Survivor's Trust as if the third codicil were void *ab initio*. Paradoxically, Petitioner further argues, however, that the prayed for relief in his Petition should not be taken at face value because he is not challenging the validity of the third codicil. In light of Trustee's averments that such relief clearly contests the Trust, however, it cannot be

---

[1] Appellant separately appeals this April 28, 2007, order in *Schwartz v. Schwartz* (Oct. 16, 2008, F053325) (nonpub. opn.). That matter was consolidated with this case for oral argument, but is decided in a separate opinion.

disregarded. This is so because the averments in the Petition clearly support such prayed for relief. Moreover, as Trustee properly asserts, had there not been any objection to this Petition, Petitioner would have gotten exactly what he prayed for, which is to nullify or void the third codicil. (See [Probate Code] Section 21300.)

"Consequently, the challenge to the subject codicil *is* a contest of its validity. In light of the expressed provisions of Trust Section 14.10, there is but one conclusion that can be reached. The Petition does violate the 'no contest' clause which is clearly prohibited by the settlors. . . . [Probate Code] Section 21305 is therefore inapplicable."

On September 11, 2007, the court filed a formal order invoking the no contest clause. Pursuant to that order, the court (1) sustained respondent's objection to appellant's petition; (2) denied appellant's petition; (3) granted respondent's petition to invoke the no contest clause of the trust; and (4) directed respondent to determine the interest of appellant as a beneficiary of the trust as if he had predeceased the exercise of the trust instrument without leaving surviving issue.

On September 18, 2007, appellant filed a notice of appeal from the September 11 order.[2]

## DISCUSSION

### I. *DID THE TRIAL COURT HAVE JURISDICTION TO DENY APPELLANT'S PETITION FOLLOWING HIS ALLEGED WITHDRAWAL OF THE PLEADING?*

Appellant contends the trial court lacked jurisdiction to deny his petition because he had voluntarily withdrawn it at an earlier point in time. We conclude contrarily.

---

[2] A trustee of a trust may petition the court under Probate Code sections 17200 through 17457 concerning the internal affairs of the trust. Proceedings concerning the internal affairs of a trust include proceedings to determine questions of construction of a trust instrument. (Prob. Code, § 17200, subd. (b)(1).) When a no contest clause appears in a trust instrument, the appropriate proceeding is one for court intervention in the internal affairs of the trust, e.g., to give instructions to the trustee (Prob. Code, § 17200, subd. (b)(6)) or to ascertain the beneficiaries of the trust and determine to whom the property shall be delivered upon termination of the trust (Prob. Code, § 17200, subd. (b)(4)). (*Genger v. Delsol* (1997) 56 Cal.App.4th 1410, 1430 [66 Cal.Rptr.2d 527].) With respect to a trust, the grant or denial of any final order under chapter 3 (commencing with § 17200) of part 5 of division 9 of the Probate Code is appealable. Moreover, the grant or denial of an order determining whether an action constitutes a contest is appealable. (Prob. Code, § 1304, subds. (a), (d).)

Respondent filed a response to appellant's petition, and the matter was continued for hearing on two occasions prior to appellant's filing of his written notice of withdrawal of his petition on December 18, 2006. On January 18, 2007, the court filed a minute order stating: "PETITION WITHDRAWN."

On April 10, 2007, respondent filed a petition to invoke the no contest clause. On May 17, 2007, appellant filed written opposition to respondent's petition to invoke the no contest clause. The matters proceeded to a contested hearing on May 24, 2007. On June 26, 2007, the court filed a written ruling deeming the petition to invoke the no contest clause as an objection to appellant's petition. The court further found that appellant's petition invoked the no contest clause of the trust agreement. The court denied appellant's petition and sustained respondent's petition to invoke the no contest clause as an objection to appellant's petition. These rulings were incorporated into the formal order of September 11, 2007, as previously set forth, from which this appeal is taken.

On appeal, appellant claims his notice of withdrawal of petition was effective and that all proceedings subsequent to the withdrawal—including the trial court's denial of his petition—are void.

■ Probate Code section 1000 states in relevant part: "Except to the extent that this code provides applicable rules, the rules of practice applicable to civil actions . . . under Title 3a (commencing with Section 391) of Part 2 of the Code of Civil Procedure, apply to, and constitute the rules of practice in, proceedings under this code. . . ." Probate Code section 1000 does not create an independent right to a full trial whenever there is a contested issue of fact. The statute merely provides that the provisions of the Code of Civil Procedure apply when the Probate Code is silent as to a particular rule of procedure. (See Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 1000, p. 459; *Merrill v. Finberg* (1992) 4 Cal.App.4th 1443, 1447 [6 Cal.Rptr.2d 434] [statute creates rule of default adopting civil practice rules].)

■ Generally speaking, a pleader cannot remove from a case, after an adverse ruling, the issue that he or she tendered. (*Schnitman v. Husted* (1929) 99 Cal.App. 666, 670 [279 P. 194].) Code of Civil Procedure section 581, subdivision (i), provides that no dismissal of an action may be made where affirmative relief has been sought by the cross-complaint of the defendant. The controlling factor is whether the other party has requested affirmative relief, regardless of the form of the pleading. Affirmative relief does not include mere defensive matter. Rather, it refers to new matter that in effect amounts to a counterattack. The relief sought, if granted, operates not as a

defense but affirmatively and positively to defeat the plaintiff's cause of action. The affirmative relief request must necessarily be sought before the voluntary dismissal is tendered. (*Conservatorship of Martha P.* (2004) 117 Cal.App.4th 857, 869–870 [12 Cal.Rptr.3d 142].)

Here, respondent's petition to invoke the no contest clause was filed about four months after appellant filed the notice of withdrawal of his petition. Thus, claims appellant, the court lacked jurisdiction over his petition. However, respondent's petition to invoke the no contest clause itself was preceded by respondent's response to appellant's petition; that response was filed more than a month prior to appellant's notice of withdrawal of his petition. In that response, respondent affirmatively alleged that appellant's petition constituted a contest.

A "contest" means any action identified in a " 'no contest clause' as a violation of the clause. The term includes both direct and indirect contests." (Prob. Code, § 21300, subd. (a).) A "direct contest" means a pleading in a proceeding in any court alleging the invalidity of an instrument or one or more of its terms based on one or more statutory factors, including revocation, lack of capacity, fraud, and misrepresentation. (Prob. Code, § 21300, subd. (b).) An "indirect contest" means a pleading in a proceeding in any court that indirectly challenges the validity of an instrument or one or more of its terms on any other ground not contained in Probate Code section 21300, subdivision (b) and that does not contain any of those grounds. (Prob. Code, § 21300, subd. (c).) A "no contest clause" means a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court. (Prob. Code, § 21300, subd. (d).)

The no contest clause in section 14.10 of the trust agreement stated: "Contest of Trust or Will. In the event any beneficiary under this trust shall, singly or in conjunction with any other person or persons, contest in any court the validity of this trust or the validity of a deceased Settlor's last Will or shall seek to obtain an adjudication in any proceeding in any court that this trust or any of its provisions or that such Will or any of its provisions is void, or seek otherwise to void, nullify, or set aside this trust or any of its provisions, then the right of that person to take any interest given to him by this trust shall be determined as it would have been determined had the person predeceased the execution of this instrument without surviving issue. The Trustee is hereby authorized to defend, at the expense of the Trust Estate, any contest or other attack of any nature on this trust or any of its provisions."

Whether there has been a "contest" within the meaning of a particular no contest clause depends upon the circumstances of the particular case and

the language used. No contest clauses are valid and favored by the public policies of discouraging litigation and giving effect to the testator's intent. Nevertheless, they are also disfavored by the policy against forfeitures, are strictly construed, and may not extend beyond what plainly was the testator's intent. The testator's intentions control, and a court must not rewrite an estate planning document in such a way as to immunize legal proceedings plainly intended to frustrate the testator's unequivocally expressed intent from the reach of the no contest clause. (*Estate of Kaila* (2001) 94 Cal.App.4th 1122, 1128–1129 [114 Cal.Rptr.2d 865].) Appellant's petition prayed for an order directing respondent to divide the property of the survivor's trust equally between himself and respondent "as required under the terms of the Survivor's Trust without giving any force or effect to the Holographic Will [the third codicil]."

In *Estate of Hite* (1909) 155 Cal. 436 [101 P. 443], decedent passed away leaving a will with two codicils. Two legatees, one under the will and the other under one of the codicils, filed a contest of the first codicil and written opposition to probate of the second codicil. After the legatees successfully interposed a motion to strike certain portions of the executor's answers, the chief beneficiary under the second codicil agreed to allocate a portion of her legacy to the first two legatees. In consideration of that allocation, the first two legatees agreed to withdraw their opposition and one of them eventually applied for a partial distribution of the estate. A residuary legatee and devisee under the will unsuccessfully moved to block the petition for partial distribution and then appealed. The Supreme Court reversed the decree of partial distribution, noting in pertinent part: "Etta Gross [one of the two contesting legatees] assails these codicils. She files written grounds of opposition which the law recognizes as a 'contest.' She subsequently invokes judicial action of the court by a motion to strike out portions of the proponent's answer to her contest. Her contest is set for hearing and the hearing from time to time continued, with the final result, which must always have been in contemplation, of forcing a compromise from the sister, who naturally stood in terror of losing her two hundred thousand dollars legacy. Can it be said that one who has thus used the machinery of the law, by methods competent and designed to work an overthrow of the testator's expressed wishes, and who has accomplished her result to the extent of taking from another legatee, by compromise, a portion of the testator's money which he had bequeathed to her, who for her personal end and gain has instituted the contest, and having accomplished her end has abandoned it,—can it, we repeat, be said that she, within the meaning of the testator's inhibition, has not contested? Clearly it cannot. The decision of each of such cases, as it arises, must be controlled by its facts. It does not follow herefrom that the mere filing of a paper contest, which has been abandoned without action and has not been employed to thwart the testator's expressed wishes, need be judicially declared a contest.

But wherever an opponent uses the appropriate machinery of the law to the thwarting of the testator's expressed wishes, whether he succeed or fail, his action is a contest." (*Estate of Hite, supra,* 155 Cal. at pp. 443–444.)

In the instant case, appellant knowingly filed a petition that took him outside the safe harbor provisions of Probate Code section 21320. The clear purpose of appellant's petition was to defeat Schwartz's testamentary and donative intent by nullifying his third codicil and giving equal shares of the survivor's trust to appellant and respondent, something that was neither contemplated nor specified in the settlors' estate plan. Appellant used the mechanisms of the court in attempting to achieve this goal. By filing his petition, appellant compelled respondent to respond to the petition, attempted to negotiate with respondent while his petition was pending, and caused the court to conduct the hearings of October 5 and December 7, 2006. On December 18, 2006, more than a month after respondent filed a response to appellant's petition and an objection to the application, appellant filed the notice of withdrawal of his petition.

As respondent correctly points out, "Robert cannot now escape the no-contest clause after he has dragged the trust, will, and codicils through the court and attempted to gain an advantage by thwarting Dr. Schwartz's intent. No-contest clauses are put in testamentary documents specifically to prevent behavior like Robert's. Robert has wasted trust resources and attempted to defeat Dr. Schwartz's intent. Robert cannot now escape the consequences by merely withdrawing the Contest—this would defeat the purpose of the no-contest clauses."

█ Appellant's petition claimed the third codicil failed to exercise a power of appointment consistent with the requirements of the survivor's trust and prayed for an equal division of the survivor's trust, with respondent and himself as the sole beneficiaries. Appellant's petition was an indirect contest of that codicil. Respondent affirmatively alleged entitlement to relief based on this indirect contest in her timely response to the petition, making it inappropriate to dismiss appellant's petition. Accordingly, the trial court properly exercised jurisdiction over appellant's petition.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 733.

## DISPOSITION

The order of September 11, 2007, is affirmed. Costs on appeal are awarded to respondent.

Cornell, J., and Kane, J., concurred.

A petition for a rehearing was denied November 5, 2008, and appellant's petition for review by the Supreme Court was denied January 21, 2009, S168634.